IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

JOHNATHAN SHADWRICK,       )
                           )
        Plaintiff,         )
                           )
    vs.                    )          4:18-cv-00851-LSC
                           )
ANDREW SAUL,               )
Commissioner of            )
Social Security,           )
                           )
        Defendant.         )

**MEMORANDUM OF OPINION**

**I.    Introduction**

The plaintiff, Jonathan Shadwrick, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Shadwrick timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Shadwrick was 46 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a ninth grade education. (Tr. at 186, 228.) He has no past relevant work experience. (Tr. at 56.) Shadwrick claims that he became disabled on August 6, 2014, suffering from Hepatitis C, liver cirrhosis, severe low

1

back pain due to a L4-5 right paracentral disc protrusion, compression of the proximal L5 nerve root, L4-S1 foraminal stenosis, depression, anxiety, insomnia, chronic obstructive pulmonary disease (COPD) with moderately severe obstruction, borderline intelligence with a Full Scale IQ of 70, post-traumatic stress disorder (PTSD), and borderline personality disorder (BPD). (Tr. at 46, 76-77, 98, 227.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment

or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Shadwrick had not engaged in SGA since August 29, 2014, the date of his application for SSI. (Tr. at 47.) According to the ALJ, Plaintiff's alcohol abuse, COPD, hepatitis C, hypertension, borderline intellectual function, depressive disorder, PTSD, panic disorder, antisocial personality disorder, and degenerative disc disease are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined that Shadwrick has the following RFC:

To perform medium work as defined in 20 CFR 416.967(c). The individual should avoid concentrated exposure to pulmonary irritants (e.g., dust, fumes, odors, and gases) and poorly ventilated areas. The individual can understand, remember, and carry out simple instructions; can maintain attention and concentration for two-hour periods of time; can adapt to routine and infrequent workplace changes; can perform jobs that do not require interaction with the general public; can have occasional interaction with coworkers; can perform jobs that do not require working in tandem with coworkers; and can perform jobs that do not require a production rate or pace.

(Tr. at 50.)

According to the ALJ, Shadwrick has no past relevant work, he is a "younger individual aged 18-49," and he has a "limited education," as those terms are defined by the regulations. (Tr. at 56.) Next, the ALJ obtained the testimony of a Vocational Expert ("VE") and determined at step five of the sequential evaluation process that there are a significant number of jobs in the national economy that Shadwrick is capable of performing, such as conveyor feeder, laundry laborer, and machine feeder. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since August 29, 2014, the date the application was filed." (Tr. at 57.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there

is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. Appendix 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Shadwrick alleges that the ALJ's decision should be reversed and remanded for several reasons: (A) the ALJ failed to state with at least some measure of clarity the grounds for her decision in repudiating the opinions of Dr. David Wilson, a two-time-examining consultative psychologist; (B) the ALJ failed to accord proper weight to the opinion of one-time examining consultative psychologist, Dr. Samuel E. Fleming; (C) the ALJ should have determined at step three that Plaintiff met or equaled Listings 12.02, 12.04, and 12.06; and (D) the ALJ failed to develop the record with regard to whether Plaintiff met Listing 5.05.

### A. Opinion of Dr. Wilson

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding

the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); see also *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). On the other hand, the opinions of a one-time examiner or of a non-examining medical source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion."

*McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

The record contains two opinions from Dr. Wilson, a consultative psychologist. (Tr. at 311-16, 592-99.) Dr. Wilson conducted an examination on October 8, 2012, wherein he addressed how Plaintiff's mental impairments affected his ability to perform certain job functions. (Tr. at 311-16.) He opined that Shadwrick has problems with his short-term memory; cognitive deficits; and functions in the lower end of the borderline range of intellectual ability. (Tr. at 315.)

Furthermore, Dr. Wilson opined that Shadwrick is limited to a manual labor type job, and that it is likely that his mental health problems would prevent him from being able to do this type of work. (*Id.*) Moreover, Dr. Wilson found Shadwrick to be anxious when he has to be around people and stated that having to be out in public would likely cause Shadwrick panic attacks. (*Id.*) Dr. Wilson also noted that Shadwrick is chronically depressed, and that the combination of all of his mental problems make it highly unlikely that he will be able to maintain any type of job. (*Id.*)

Dr. Wilson performed another consultative psychological evaluation on April 24, 2017. (Tr. at 592-99.) He opined that Shadwrick's thought processes were intact; his speech was clear and normal in rate; and he was cooperative and respectful throughout the examination. (Tr. at 595.) On the other hand, Dr. Wilson noted that Shadwrick continued to have problems with depression and anxiety; had great difficulty making it through the interview because of his anxiety and claustrophobic tendencies; suffered from panic attacks in public places; had cognitive deficits; and his ability to withstand the pressures of day to day occupational functioning is highly impaired. (Tr. at 597.) Ultimately, Dr. Wilson opined that Shadwrick's cognitive deficits limited his job options to manual labor, and his health issues would likely make even that kind of work impossible. (*Id.*)

The ALJ gave some weight to Dr. Wilson's 2012 evaluation. (Tr. at 55.) Substantial evidence supports the ALJ assigning only some weight to Dr. Wilson's opinion. The ALJ noted that Dr. Wilson stated that from a psychological and cognitive standpoint, Shadwrick can perform a manual labor job. (Tr. at 55, 315.) Moreover, the ALJ determined that Dr. Wilson's finding that Shadwrick's COPD and liver problems would prevent him from performing a manual labor type job was inconsistent with the objective medical evidence. (Tr. at 55, 315.)

The medical evidence of record does show a history of treatment for COPD. (Tr. at 414-60, 482-520, 551-56, 558-76, 592-99.) Beginning in 2011 and 2012, Shadwrick complained of coughing, shortness of breath, and aspiration problems, and he also admitted that he smoked one pack of cigarettes per day for nearly 30 years. (Tr. at 415, 420, 424.) However, several of Shadwrick's physical examinations showed that his respiratory system was normal to inspection in 2011 and 2012. (Tr. at 417, 421, 422, 426, 430, 431, 434, 437.) Then, on August 28, 2014, Shadwrick sought treatment for cough, congestion, and general malaise associated with an upper respiratory infection. (Tr. at 51, 507-22.) Again, the medical records and physical examinations showed that his lungs were clear to auscultation and a chest x-ray was normal. (Tr. at 51, 515-16, 521.)

Next, the ALJ highlighted that Shadwrick sought treatment for sharp, stabbing chest pain with a harsh, productive cough and wheezing on May 31, 2016. (Tr. at 551-56.) The medical records note that Shadwrick had wheezes, but no respiratory distress, and a chest x-ray was again normal. (Tr. at 551-56.) The ALJ also noted on a March 2017 primary care visit, Shadwrick reported that his respiratory symptoms were stable with inhaler use; and he noted that Shadwrick was still smoking. (Tr. at 52, 577.) Furthermore, the ALJ stated that no respiratory abnormalities were mentioned in the medical records documenting the physical examination in March 2017. (Tr. at 52, 577-84.)

As for Shadwrick's liver condition, the ALJ noted that the medical evidence confirmed he was diagnosed with hepatitis C. (Tr. at 52, 435.) The ALJ also noted that at a June 30, 2016 primary care visit, Shadwrick reported no symptoms aside from some fatigue. (Tr. at 52, 558.) Additionally, the ALJ pointed out that his liver condition was aggravated by alcohol consumption, but he admitted that he was drinking beer daily. (Tr. at 52, 558.) Shadwrick again denied any current symptoms and inquired about beginning treatment for his liver condition on a March 27, 2017 primary care visit. (Tr. at 52, 577.)

Therefore, the ALJ properly only assigned some weight to Dr. Wilson's 2012 opinion because it was inconsistent with the objective medical evidence.

Specifically, the ALJ described in detail that Shadwrick's medical records and examinations do not support Dr. Wilson's opinions that his COPD and liver conditions limit his ability to perform manual labor type work.

The ALJ gave little weight to Dr. Wilson's 2017 opinion. Substantial evidence supports this. The ALJ noted that Dr. Wilson acknowledged from a psychological and cognitive standpoint that Shadwrick is capable of performing a manual labor job. (Tr. at 55, 597.) Furthermore, the ALJ pointed out that Dr. Wilson's opinions were inconsistent with his findings and the overall medical record. (Tr. at 55.) For instance, the ALJ mentioned that Dr. Wilson stated Shadwrick was not able to understand, remember, or carry out very short and simple instructions. (Tr. at 55, 592-99.) This was inconsistent with Dr. Wilson's examination records, as the ALJ highlighted that Dr. Wilson noted Shadwrick was compliant during the evaluation, giving good effort. (Tr. at 55, 592-99.) Another inconsistency the ALJ pointed out was the fact that Dr. Wilson opined that Shadwrick was not able to maintain socially appropriate behavior or adhere to basic standards of neatness and cleanliness, despite stating that Shadwrick was neatly groomed, cooperative, and respectful. (Tr. at 55, 592-99.)

Moreover, the ALJ pointed out that there is no indication of disabling mental health symptoms in the objective medical evidence or records. (Tr. at 54.) Notably,

Shadwrick's presentation during consultative examinations has been quite different from how he presents when he is seeking treatment, according to the ALJ. (*Id.*) Specifically, the ALJ noted that Shadwrick exhibited deficits in memory, attention, concentration, and cognition during consultative examinations, but no such issues have been observed by any treating source. (Tr. at 54, 311-16, 317-22, 482-550, 551-56, 557, 558-76, 592-99.) Additionally, Shadwrick has abused alcohol during the relevant period, but the evidence does not indicate that alcohol consumption significantly worsens any of his mental symptoms, and his alcohol abuse is therefore not material to the determination of disability. (Tr. at 54.) For instance, when Shadwrick sought treatment for substance abuse on May 31, 2016, at the CED Mental Health Center (Center), he demonstrated a normal mood and affect with normal behavior, judgment, and thought content. (Tr. at 552.)

Then, on June 30, 2016, when he was asked to consider treatment at the Center, but refused, Shadwrick denied any psychological symptoms and did not appear to be agitated or anxious. (Tr. at 558-76.) Additionally, his mood and affect were appropriate with normal behavior; his fund of knowledge was sufficient; he demonstrated no memory loss; and his attention span, concentration, insight, and judgment were all described as normal. (*Id*.) Again, on March 2017, he denied

current drug abuse or alcoholism at the Center, but it was noted in his medical records that his mood and affect were appropriate. (Tr. at 577-84.)

Thus, the ALJ did not substitute her opinion for any medical expert, but rather she weighed the conflicting evidence to make findings reserved for the Commissioner. *See* 20 C.F.R. § 416.927(d)(2) (While the Commissioner will consider opinions from medical sources, the final responsibility for deciding the issue of a claimant's RFC is reserved to the Commissioner). Here, the ALJ properly evaluated the relevant evidence and the opinions of Dr. Wilson. Additionally, the ALJ resolved the conflicting medical evidence with Dr. Wilson's opinions and decided to give only some weight to Dr. Wilson, which she was entitled to do. *See* 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's decision to only assign some or little weight to Dr. Wilson's opinions is supported by substantial evidence.

### B. The Weight to Dr. Fleming's Opinion, Consultative Psychologist

Dr. Fleming conducted a consultative examination of Shadwrick on November 3, 2014. (Tr. at 53, 318.) On examination, Dr. Fleming found Shadwrick to be cooperative with spontaneous, coherent, and goal-directed speech and estimated his intelligence to fall in the borderline range. (Tr. at 53, 320-21.) He further opined that Shadwrick was unable to perform serial sevens or solve multiplication problems. (Tr. at 320.) In addition, Dr. Fleming found that

Shadwrick's immediate and recent memory was intact, but he exhibited impaired remote memory. (*Id.*) He also noted Shadwrick's poor judgment, explaining that Shadwrick did not seem to accept responsibility for his problems. (*Id.*) Ultimately, Dr. Fleming diagnosed Shadwrick with PTSD and antisocial personality disorder. (Tr. at 321.)

The ALJ assigned little weight to the opinion of Dr. Fleming. (Tr. at 55, 317-22.) The ALJ explained that Dr. Fleming's opinions regarding Shadwrick's ability to interact with others in the workplace is not supported by his observations from his one-time examination of Shadwrick nor Shadwrick's own statements. (*Id.*) Additionally, the ALJ stated that Dr. Fleming failed to indicate whether Shadwrick could perform simple tasks. (*Id.*)

Substantial evidence supports the ALJ's decision to afford little weight to Dr. Fleming's opinion. First, Dr. Fleming's opinion was based on a single examination, which appeared to rely heavily on Shadwrick's subjective complaints, according to the ALJ. (Tr. at 55.) *See Crawford,* 363 F.3d at 1159-60 (opinion not entitled to deference where the opinion was based on subjective complaints); *see also Wheeler v. Heckler,* 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded [to] a physician's conclusory statements depends upon the extent to which they are

supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Moreover, Dr. Fleming's opinion was conclusory, failing to support his conclusions with objective examination notes. (Tr. at 317-22.) Dr. Fleming noted that Shadwrick's appearance was appropriate; his personal hygiene was adequate; his mannerisms and motor activity were normal; he was cooperative during the evaluation; and his speech was spontaneously produced, coherent, and goal directed. (Tr. at 319.) In addition, Dr. Fleming noted that his general fund of information was adequate; his abstraction abilities were adequate; and he had no issues with his thought process. (Tr. at 320-21.) However, Dr. Fleming diagnosed Shadwrick with PTSD and antisocial personality disorder. (Tr. at 321.) Thus, the conclusory nature of Dr. Fleming's opinion supports the ALJ's findings that his opinion was based heavily on Shadwrick's subjective complaints.

Second, Dr. Fleming's opinion is without substantial support from other evidence in the record. (Tr. at 55.) The ALJ noted that there is no indication of any disabling mental health symptoms elsewhere in the record. (Tr. at 54.) The ALJ also pointed out that Shadwrick admitted to periods of noncompliance with prescribed Zoloft, but even when noncompliant, he exhibited no significant mental health symptoms. (Tr. at 54, 317.)

As demonstrated above, substantial evidence supports the ALJ assigning little weight to Dr. Fleming's opinion because it relies heavily on the subjective complaints of Shadwrick and is unsupported by other evidence in the record.

### C. Meeting Listings 12.02, 12.04 or 12.06

Shadwrick next contends that the ALJ should have found that his mental impairments met Listing 12.02 (neurocognitive disorders), Listing 12.04 (affective disorders), and/or Listing 12.06 (anxiety disorders) because he sought out mental health treatment on five occasions: in October 2012, September 2013, November 2014, February 2016, and April 2017. Shadwrick's argument fails because although he cites to a number of his treatment notes, namely of Dr. John Schosheim, a non-examining psychiatrist, he fails to explain how any of these records show that he actually met all the criteria of these listings.

To establish a presumption of disability based upon a listing at step three, a claimant must show "a diagnosis included in the Listings and must provide medical reports documenting that the conditions met the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926. Additionally, a claimant's impairments must meet or equal *all* of the specified medical criteria in a particular listing for the claimant to be disabled at

step three. *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 531.

### 1. Listing 12.02

Listing 12.02 addresses neurocognitive disorders, as follows:

Characterized by a clinically significant decline in cognitive functioning. Symptoms and signs may include, but are not limited to, disturbances in memory, executive functioning (that is, higher-level cognitive processes; for example, regulating attention, planning, inhibiting responses, decision-making), visual-spatial functioning, language and speech, perception, insight, judgment, and insensitivity to social standards. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in A and C are satisfied.

A.  Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas: 1. Complex attention; 2. Executive function; 3. Learning and memory; 4. Language; 5. Perceptual-motor; or 6. Social cognition; AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1. Understand, remember, or apply information; 2. Interact with others; 3. Concentrate, persist, or maintain pace. 4. Adapt or manage oneself; OR

C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and 2. Marginal adjustment, that is, you have

minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02. The term "marked" means more than moderate but less than extreme. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(e). Under the Commissioner's five-point rating scale, "No limitation," "Mild limitation," "Moderate limitation," "Marked limitation," and "Extreme limitation" indicate, respectively, no limitation, slightly limited ability, fair ability, seriously limited ability, and no ability to function independently, appropriately, and effectively. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(F)(2).

Substantial evidence supports the ALJ's finding that Plaintiff did not meet this listing because he had no more than moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself. (Tr. at 48-49.)

First, the ALJ found that Shadwrick has only mild limitations in understanding, remembering, or applying information. (Tr. at 48, 250-58.) Shadwrick indicated that he needs to be reminded to take his medications, but he does not require reminders to groom. (Tr. at 252.) Shadwrick also stated that he is

okay with spoken instructions but does not follow written ones well. (Tr. at 255.)

The ALJ noted that the objective medical evidence establishes that Shadwrick has

been assessed to have a full-scale IQ of 70, based upon administration of the

Wechsler Adult Intelligence Scale, Fourth Edition, in October 2012. (Tr. at 48, 311-

16.) Nevertheless, Shadwrick's treatment records from Mary Burgess-Parker,

CRNP, Plaintiff's treating certified registered nurse practitioner, demonstrates a

sufficient fund of information. (Tr. at 558-76.) Moreover, the ALJ noted that while

Shadwrick exhibited some memory impairment at consultative examinations on

November 3, 2014, and April 24, 2017, he displayed no such difficulties before Mary

Burgess-Parker, CRNP. (Tr. at 318-22, 558-76, 592-99.) Therefore, the ALJ properly

concluded that the substantial evidence supports a finding that Shadwrick's

limitations are no more than mild in understanding, remembering, or applying

information. (Tr. at 48.)

Then, the ALJ determined that in interacting with others, Shadwrick has

moderate limitations. (Tr. at 48.) Shadwrick has complained that he feels

uncomfortable around people, although he has denied that he has difficulty getting

along with others. (Tr. at 48, 86-87, 254, 318-22, 592-99.) Despite these complaints,

Shadwrick has acknowledged that he does not need to be accompanied in public.

(Tr. at 48, 253.) Moreover, Shadwrick has reported that he has a friend who helps

him with daily activities, and he enjoys spending time with his family. (Tr. at 48, 86, 251-56, 592-99.) The ALJ also noted that Shadwrick is consistently described as cooperative and respectful during medical encounters. (Tr. at 311-16, 318-22, 484-550, 592-99.) Thus, the ALJ properly concluded that substantial evidence supports a finding that Shadwrick's limitations are moderate in interacting with others.

With regard to concentrating, persisting, or maintaining pace, the ALJ found that Shadwrick has moderate limitations. (Tr. at 48.) Shadwrick claims that he can only maintain attention for 20 minutes at a time and does not complete tasks. (Tr. at 48, 251-57.) However, the ALJ noted that the evidence of record reveals inconsistencies in his performance before consultative examiners. (Tr. at 48.) For instance, the ALJ pointed out that Shadwrick appeared to demonstrate deficiencies in attention and concentration at the consultative examinations on November 3, 2014, and April 24, 2017, but Mary Burgess-Parker, CRNP, has observed him as having a normal attention span. (Tr. at 318-22, 558-76, 592-99.) Furthermore, the ALJ noted that Dr. Wilson, concluded that Shadwrick gave good effort during the evaluation, establishing that he is able to persist and maintain pace. (Tr. at 48, 595.) The ALJ properly concluded that substantial evidence supports a finding that Shadwrick's limitations are moderate with regard to concentrating, persisting, or maintaining pace.

The ALJ provided substantial evidence to support her conclusion that Shadwrick's impairments do not cause at least two "marked" limitations or one "extreme" limitation, and therefore, the "paragraph B" criteria are not satisfied. (Tr. at 48-49.) As for "paragraph C" criteria, the ALJ also considered whether those criteria were satisfied. (Tr. at 49.) Ultimately, the ALJ found that the objective medical evidence fails to establish the presence of the "paragraph C" criteria as discussed in detail above. (Tr. at 49.) Thus, the ALJ properly concluded that the record does not establish that Shadwrick has only marginal adjustment, that is, a minimal capacity to adapt to changes in Shadwrick's environment or to demands that are not already part of Shadwrick's daily life. (Tr. at 49.)

## 2. Listing 12.04

Listing 12.04 addresses affective disorders, as follows:

Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight;

or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following: a. Hyperactivity; or b. Pressure of speech; or c. Flight of ideas; or d. Inflated self-esteem; or e. Decreased need for sleep; or f. Easy distractibility; or g. Involvement in activities that have a high probability of painful consequences which are not recognized; or h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration; OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Episodes of decompensation are exacerbations or temporary increases in symptoms accompanied by a loss in adaptive functioning, as manifested by difficulties in daily activities, social functioning, or concentration, persistence or pace. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C(4). "[R]epeated" episodes of "extended duration" means three episodes within one year or an average every four months, each lasting for two weeks. *Id.*

Substantial evidence supports the ALJ's finding that Shadwrick did not meet this listing because he had no more than moderate restriction in activities of daily living, social functioning, or maintaining concentration, persistence, or pace, and no repeated episodes of decompensation each of extended duration. As the ALJ discussed, Shadwrick indicated in function reports that he had no problems with personal care and that he is able to prepare his own meals, clean, do laundry, wash

dishes, do light yard work, and go shopping. (Tr. at 48-49, 251-57.) Shadwrick also indicated that he did not have any problems getting along with family, friends, or neighbors. (Tr. at 254.)

For the reasons explained in the previous section, the ALJ correctly pointed out that the evidence of record is inconsistent. Thus, substantial evidence supports the ALJ's findings that Shadwrick's impairments did not meet or equal a listed impairment under Listing 12.04.

### 3. Listing 12.06

Listing 12.06 addresses anxiety-related disorders, as follows:

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive expectation; or d. Vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration. OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.

Substantial evidence supports the ALJ's finding that Shadwrick does not meet

the Listing 12.06. As previously discussed, Shadwrick does not satisfy meeting the

criteria of "paragraph B," leaving only the criteria of "paragraph C" to consider.

Shadwrick testified that he does not like to be around other people, as it makes him

feel claustrophobic. (Tr. at 87.) He further testified that he stays at home in order

to avoid situations where he has to be around other people. (Tr. at 89.) However, the ALJ noted that there is evidence that Shadwrick is capable of some level of independence outside of the home. For instance, Dr. Wilson noted that Shadwrick arrived alone and on time to his appointment in October 2012. (Tr. at 313.) Shadwrick told Dr. Wilson that he drove himself even though he does not have a license. (*Id.*) Additionally, Shadwrick reported that he spends time with others, namely his family, and he is able to go outside on his own. (Tr. at 253-54.) Shadwrick also reported that he shops for groceries in stores. (Tr. at 253.) Thus, substantial evidence supports the ALJ's findings that Shadwrick's impairments did not meet or equal a listed impairment under Listing 12.06.

In sum, Shadwrick failed to show his impairments meet Listings 12.02, 12.04, or 12.06, and substantial evidence supports the ALJ's conclusion that they did not.

### D. Failure to Develop the Record with regard to Listing 5.05

Listing 5.05 addresses chronic liver disease, as follows:

Characterized by liver cell necrosis, inflammation, or scarring (fibrosis or cirrhosis), due to any cause, that persists for more than 6 months. Chronic liver disease may result in portal hypertension, cholestasis (suppression of bile flow), extrahepatic manifestations, or liver cancer. (We evaluate liver cancer under 13.19.) Significant loss of liver function may be manifested by hemorrhage from varices or portal hypertensive gastropathy, ascites (accumulation of fluid in the abdominal cavity), hydrothorax (ascitic fluid in the chest cavity), or encephalopathy. There can also be progressive deterioration of laboratory findings that are indicative of liver dysfunction.

The required level of severity for these disorders is met when the requirements in either A, B, C, D, E, F, or G are satisfied.

A. Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood. Consider under disability for 1 year following the last documented transfusion; thereafter, evaluate the residual impairment(s). OR

B. Ascites or hydrothorax not attributable to other causes, despite continuing treatment as prescribed, present on at least 2 evaluations at least 60 days apart within a consecutive 6-month period. Each evaluation must be documented by: 1. paracentesis or thoracentesis; or 2. appropriate medically acceptable imaging or physical examination and one of the following: a. serum albumin of 3.0 g/dL or less; or b. international Normalized Ratio (INR) of at least 1.5. OR

C. Spontaneous bacterial peritonitis with peritoneal fluid containing an absolute neutrophil count of at least 250 cells/mm3. OR

D. Hepatorenal syndrome as described in 5.00D8, with one of the following: 1. serum creatinine elevation of at least 2 mg/dL; or 2. oliguria with 24-hour urine output less than 500 mL; or 3. sodium retention with urine sodium less than 10 mEq per liter. OR

E. Hepatopulmonary syndrome as described in 5.00D9, with: 1.arterial oxygenation (PaO2) on room air of: a. 60 mm Hg or less, at test sites less than 3000 feet above sea level, or b. 55 mm Hg or less, at test sites from 3000 to 6000 feet, or c. 50 mm Hg or less, at test sites above 6000 feet; or 2. documentation of intrapulmonary arteriovenous shunting by contrast-enhanced echocardiography or macroaggregated albumin lung perfusion scan. OR

F. Hepatic encephalopathy as described in 5.00D10, with 1 and either 2 or 3: 1. documentation of abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness (for example, confusion, delirium, stupor, or coma), present on at least two evaluations at least 60

days apart within a consecutive 6-month period; and 2. history of transjugular intrahepatic portosystemic shunt (TIPS) or any surgical portosystemic shunt; or 3. one of the following occurring on at least two evaluations at least 60 days apart within the same consecutive 6-month period as in F1: a. asterixis or other fluctuating physical neurological abnormalities; or b. electroencephalogram (EEG) demonstrating triphasic slow wave activity; or c. serum albumin of 3.0 g/dL or less; or d. International Normalized Ratio (INR) of 1.5 or greater. OR

G. End stage liver disease with SSA CLD scores of 22 or greater calculated as described in 5.00D11. Consider under a disability from at least the date of the first score.

Shadwrick argues that the ALJ should have obtained the testimony of a medical expert to evaluate whether he met Listing 5.05. Shadwrick lists the criteria of Listing 5.05, and he cuts and pastes block quotes from cases as well as portions of his medical records into his brief, but he does not explain how his impairments met or equaled the criteria in Listing 5.05.

In any event, an ALJ is not required to obtain medical expert testimony when the record contains sufficient evidence for the ALJ to make an informed decision. *See Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999). The decision as to whether Shadwrick's impairments meet or equal a Listing is an issue reserved for the Commissioner. *See* 20 C.F.R. §§ 416.926(e), 416.927(d)(2). There must be a showing of prejudice before it is found that Shadwrick's right to due process has been violated to such a degree that the case must be remanded to the

Commissioner for further development of the record. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

In this case, the ALJ properly performed her duty to fully and fairly develop the record. There is no objective medical evidence that suggests Shadwrick meets any of the criteria in Listing 5.05. While Shadwrick complained of back pain and liver problems, he failed to provide evidence of hemorrhaging from the esophageal, gastric, or ectopic varices; ascites or hydrothorax not attributable to other causes; or spontaneous bacterial peritonitis. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.05. Therefore, Shadwrick failed to meet his burden of proving his impairments met or equaled Listing 5.05. *See Zebley*, 493 U.S. at 530-31; *Wilson*, 284 F.3d at 1224. The ALJ properly performed her duty of determining whether Shadwrick's impairments met or equaled a Listing, and the ALJ was not required to obtain or rely on a doctor's opinion in reaching her finding that Shadwrick's impairment did not meet or equal a Listing. *See* 20 C.F.R. §§ 416.926(e), 416.927(d)(2); SSR 96-5p. Thus, substantial evidence supports the ALJ's decision.

## IV. Conclusion

Upon review of the administrative record, and considering Shadwrick's arguments, this Court finds the Commissioner's decision is supported by

substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on March 17, 2020.

L. Scott Coogler
United States District Judge

201416